WASHINGTON NATIONAL DEVELOPMENT CO., Petitioner-Respondent,

v.

Wisconsin DEPARTMENT OF REVENUE, Respondent-Appellant.†

Court of Appeals

*No. 94-2483. Submitted on briefs November 18, 1994.—Decided May 4, 1995.*

(Also reported in 535 NW2d 71.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Alan Lee*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Lawrence A. Trebon* of *Trebon & Mayhew* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. The appellant Wisconsin Department of Revenue presents the following issue:

> Were the real estate transfers from Washington National Development Co., to Washington Square I and Washington Square II exempt under § 77.25(9), STATS., from the real estate transfer fee as a transfer between principal and agent?

We conclude that the transfers were exempt from a real estate transfer fee and affirm the trial court's order reversing the decision and order of the Tax Appeals Commission.

Section 77.22(1), STATS., "impose[s] on the grantor of real estate a real estate transfer fee . . . on every conveyance not exempted or excluded under this subchapter." Section 77.25(9), STATS., exempts from the real estate transfer fee conveyances "[b]etween agent and principal or from a trustee to a beneficiary without actual consideration."

The department concedes that the conveyances from Washington National to Washington Square I and Washington Square II were made without actual consideration. The department states that the only question presented is whether the conveyances from Washington National to the two partnerships were conveyances between an agent and principal. The commission affirmed the department's denial of the taxpayer's motion for redetermination of the department's additional assessment of real estate transfer fees and interest and penalties. The commission agreed

with the department that the conveyances from Washington National to the Washington Square partnerships were not exempt under § 77.25(9), STATS.

■

We recognize the three levels of deference accorded to an administrative agency's interpretation of a statute. *See William Wrigley, Jr., Co. v. DOR*, 176 Wis. 2d 795, 801, 500 N.W.2d 667, 670 (1993). Where, as here, the record does not show that the agency has experience, technical competence, and specialized knowledge which aids the agency in its interpretation of the statute in issue, and we are as competent as the agency to interpret the statute, we interpret the statute *de novo*. *See West Bend Co. v. LIRC*, 149 Wis. 2d 110, 117, 438 N.W.2d 823, 827 (1989); *DOR v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48, 257 N.W.2d 855, 857-58 (1977). We reject the commission's conclusion that the relationship of agent and principal could not exist between Washington National and the Washington Square partnerships because the partnerships did not exist when the Agency Agreement was entered into. We conclude that § 77.25(9), STATS., requires that the agent/principal relationship be examined as of the date of the conveyance which the department claims is subject to the real estate transfer fee.

The stipulated facts show that on February 24, 1986, Van Buren Management, Inc., by its president Joel S. Lee, accepted Northwestern National Insurance Company's counteroffer to sell three parcels of land located in downtown Milwaukee. On June 9, 1986, Lee agreed with Washington National that he would purchase and hold title to the parcels as agent for a limited partnership to be formed by Lee, Washington National and others.

On June 30, 1986, Lee and Washington National formed Jackson Development Limited Partnership to acquire Northwestern National's parcels for investment purposes. On the same date, Lee, Washington National, Van Buren Management, Inc., and Jackson Development entered into an Agency Agreement pursuant to which Lee and Washington National "on behalf of themselves *and/or entities to be formed*" appointed Van Buren, Lee, Washington National and/or Jackson Development as their agents to purchase, manage and otherwise deal with the parcels "until such time as Lee and Washington National have formed and designated the persons or entities to which ultimate ownership of the Parcels shall be granted." (Emphasis added.)

On July 1, 1986, Northwestern National and Jackson Development closed the purchase of the three parcels and other property owned by Northwestern National. By warranty deed dated June 30, 1986, Northwestern National conveyed the three parcels to Jackson Development. On November 30, 1986, Jackson Development quitclaimed title to the parcels to Washington National. Lee and Washington National immediately dissolved Jackson Development.

Before its dissolution, Jackson Development, by its managing partner Joel Lee, obtained an urban development action grant from the city of Milwaukee's redevelopment authority to develop its project. Lee explained to the city that three "distinct and unrelated" partnerships would be created for the project. This appeal involves conveyances to only two of the partnerships, Washington Square Associates I and Washington Square Associates II.

On November 3, 1986, in anticipation of forming the limited partnership, Washington National's attor-

neys reserved the names "Washington Square I" and "Washington Square II" with the secretary of state. However, the partnerships were not formed until December 30, 1986. On that date, Washington National conveyed the parcels to Washington Square I and II.

The Washington Square I partners were Van Buren, Washington National, Lee, Pauline Adams and Michael K. Comerford. Washington National did not join the Washington Square I partners in forming Washington Square II. This mix of original partners with additional investors caused the department to deny Washington National's petition for redetermination in part because the Washington Square partners "were not involved with the prior agent to principal conveyances."

Washington National explains why Jackson Development conveyed the properties to it rather than directly to the Washington Square partnerships. Bond counsel for Washington Square I and Washington Square II advised the partnerships that they should not take title from Jackson Development because it was a "related party" under I.R.C. § 144 which placed limits on industrial revenue bond financing. Counsel recommended that Jackson Development convey the properties to Washington National which would in turn convey the properties to Washington Square I and Washington Square II.

The trial court noted the recommendation of bond counsel and stated: "It is undisputed that the entire rationale for the transfer of the subject properties to an intermediary before they were ultimately titled in the Washington Square Partnerships was the recommendation of bond counsel for the Partnerships." The court correctly concluded that "Washington National's sole

purpose in serving as intermediary was to avoid compromising the Washington Square Partnerships' receipt of industrial revenue bond financing and Washington National fully ratified the understanding it had at the time it took title to the properties . . . ."

The trial court found that the entire course of conduct culminating in the creation of the Washington Square partnerships and the conveyance of the properties by Washington National to the partnerships led to the "inescapable conclusion" that Washington National acted as agent for the partnerships when it accepted the conveyance of the properties from Jackson Development and conveyed them to the partnerships. We agree. Washington National did not act on its own behalf but on behalf of the partnerships and the partners. "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." RESTATEMENT (SECOND) OF AGENCY § 14K (1958). Clearly, Washington National acted entirely for the benefit of the partnerships by fulfilling the purpose of the partners to acquire and develop the properties purchased from Northwestern National. From the outset, it was the purpose of the partners under the Agency Agreement to acquire the properties from Northwestern National and ultimately, to grant ownership of the properties to "entities to be formed."

The Tax Appeals Commission concluded that there was no principal/agent relationship because the entities which were to own the properties were not in existence when the Agency Agreement was executed. The commission cited 2A C.J.S. *Agency* § 27 (1972):

572

> The word "agency" imports the contemporaneous existence of a principal, and an agent cannot exist without a then existing principal; the term "agent" necessarily contemplates or presupposes the existence of a principal. There is no agency unless one is acting for and in behalf of another, since a man cannot be the agent of himself.

The commission incorrectly focused on the June 30, 1986 Agency Agreement date rather than the December 30, 1986 conveyance date. Clearly, on the latter date, Washington National acted as the agent of the partnerships when it conveyed the properties to them. The facts that Washington Square I and Washington Square II were separate entities and included persons who were not parties to the Agency Agreement does not affect the result. The Agency Agreement was fulfilled when Jackson Development acquired the Northwestern National properties and caused the properties to be conveyed to the "entities to be formed." The form of those entities and their members did not affect the principal/agent relationship.

*By the Court.*—Order affirmed.